

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 3, 2024

**BY ECF**

The Honorable George B. Daniels
United States District Judge
District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Abraham Kahan*, 18 Cr. 158 (GBD)

Dear Judge Daniels:

      The Government respectfully submits this letter to advise the Court of the pertinent facts concerning the assistance that the defendant, Abraham Kahan, has rendered in the investigation and prosecution of others. In light of these facts, and assuming that Kahan continues to comply with the terms of his cooperation agreement and commits no additional crimes before sentencing, the Government intends to move at sentencing, pursuant to Section 5K1.1 of the United States Sentencing Guidelines (the "Guidelines") and Section 3553(e) of Title 18, United States Code, that the Court sentence Kahan in light of the factors set forth in Section 5K1.1(a)(1)-(5) of the Guidelines. Kahan's sentencing is scheduled for April 17, 2024, at 10:00 a.m.

      As the Court is aware, Kahan's case is related to the prosecution of Mendel Zilberberg and Aron Fried. *See* 19 Cr. 802 (GBD). Zilberberg was tried on charges of wire fraud and conspiracy before a jury in July 2023. As described below, Kahan testified during the course of that trial. Zilberberg was sentenced primarily to 30 months' imprisonment. Fried, who pleaded guilty, was sentenced primarily to 1 year and 1 day's imprisonment.

### Background & Offense Conduct

      As the trial evidence established, in 2009, Kahan orchestrated a scheme with Fried and Zilberberg, then a board member of Park Avenue Bank (the "Bank"), to fraudulently obtain a $1.4 million loan from the Bank. Since Kahan's prior felony conviction impaired him from obtaining the loan in his own name, Kahan enlisted an acquaintance, Herschel Sauber, to sign for the loan and serve as a straw borrower as a favor to Kahan.

      At Kahan's behest, on or about August 31, 2009, Sauber and his wife applied for an approximately $1.4 million unsecured line of credit (the "Loan") from the Bank. The Bank's

internal review of the Loan was summarized in a presentation intended for internal bank review (the "Presentation"), which stated that, among other things, the purpose of the Loan was "[t]o be used for working capital for business investments." The Presentation identified Sauber's primary business as Orthocraft, Inc., and falsely noted that "Mr. Sauber stated that he needs funds to make additional investments, such as down payments on properties, etc. The flexibility of a line of credit will make these investments possible." The Presentation further falsely listed Sauber as a "client" of Zilberberg. The Loan documents did not mention Kahan or Fried. Sauber signed the Loan documents, along with his wife.

On or about September 18, 2009, the Bank funded the Loan, depositing $1.4 million into an account held in Sauber's name. Bank records reflect that proceeds from the Loan were quickly distributed into accounts controlled by third parties, specifically Kahan and Fried. From the proceeds of the Loan, Fried received approximately $836,000 from Sauber. In turn, Fried directed $466,000 from the Loan funds to One World United, Inc., a business owned by Zilberberg. Kahan received approximately $505,000 from Sauber and sent approximately $450,000 to Fried, his friend and associate, as part of the deal for Kahan to become a partner in Fried's business, Emanuel Services.

Within approximately one year, the Loan fell into default. The Bank itself was closed by the New York State Banking Department in or about March 2010, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as the receiver of the Bank. The Loan and other Bank obligations were assumed by a successor bank. The Loan was never fully repaid and the successor bank and the FDIC suffered a combined loss of over $1 million on the loan.

As Kahan testified at trial, he was later deposed by the FDIC and was not truthful in that sworn testimony. As he also testified at trial, the defendant's current healthcare company was paid money pursuant to the New York State Wage Parity Act that was not provided, or only partially provided, to the employees of the business. For that conduct, the defendant pleaded guilty to healthcare fraud and money laundering as part of his plea agreement. Finally, the defendant hid his involvement in his current healthcare company by reposing ownership solely in his wife's name. He pleaded guilty to providing false statements to federal law enforcement for his false statements in proffers relating to that fact.

## Kahan's Cooperation

### A. Proffers and Other Cooperation

Kahan was arrested on September 26, 2017, and began proffering with the Government on December 19, 2017. As part of his cooperation, Kahan met with the Government for multiple proffer sessions over several years. Kahan also agreed to meet with AUSAs from the Eastern District of New York to provide information about an unrelated investigation.

In his proffer sessions, Kahan provided the Government with detailed descriptions of the straw loan scheme and the roles of each of the defendants. For example, Kahan was able to provide

the information—which was presented at trial—that Zilberberg was the person who suggested that the amount of the loan be increased to $1.4 million. He also proffered, and later testified at trial, that Zilberberg (via Fried) had told Kahan to direct Sauber to lie to the Bank if Sauber were asked about the Loan.

As described above, Kahan pleaded guilty to lying to federal agents for his statements about the ownership of his current company. His statements about the straw loan scheme itself and its participants were reliable and well-corroborated.

### B. Trial Testimony

As the Court is aware, Kahan testified at the trial of Mendel Zilberberg. In preparation for that testimony, he met with the Government numerous times. His testimony, which the Government believes was truthful, laid out Zilberberg's role in the fraud and the roles played by others in the scheme.

Kahan testified regarding the straw loan and Zilberberg's knowledge of that fraud. Kahan was able to provide the jury with information about the inception of the scheme and the context and purpose of the loan. This testimony, which was consistent with the testimony of other witnesses at trial, provided important evidence of Zilberberg's role in the scheme. Kahan testified about numerous documents, including emails and *heter iska* documents (documents under Jewish law which allowed the defendants to receive the proceeds of the Loan). He also testified about how the proceeds of the Loan were split between the co-conspirators and how Zilberberg (via an employee) directed Sauber to send proceeds to Zilberberg's company. Kahan was also the subject of a lengthy cross-examination, during which he testified truthfully and admitted candidly to his previous wrongdoing.

## Section 5K1.1 Factors

Kahan's cooperation has been substantial for all of the reasons described above.

Applying his cooperation to the non-exclusive criteria set forth in U.S.S.G. § 5K1.1, (1) Kahan's cooperation was significant and useful in the investigation and prosecution of multiple participants in a straw loan scheme, (U.S.S.G. § 5K1.1(a)(1)); (2) Kahan's information was truthful, complete, and reliable, both with respect to his actions and the actions of others (U.S.S.G. § 5K1.1(a)(2)); (3) the nature and extent of Kahan's cooperation, through numerous meetings with the Government, and through his testimony at Zilberberg's trial, was substantial (U.S.S.G. § 5K1.1(a)(3)); and (4) Kahan's cooperation, which began shortly after his arrest, occurred in sufficient time for the Government to identify and develop evidence against numerous individuals, and was timely (U.S.S.G. § 5K1.1(a)(5)).

## Conclusion

In light of the facts set forth above, and assuming Kahan continues to comply with the

terms of his cooperation agreement, commits no additional crimes before sentencing, and appears for his sentencing as scheduled, the Government intends to request at sentencing, pursuant to Section 5K1.1 of the Guidelines and Section 3553(e) of Title 18, United States Code, that the Court sentence Kahan in light of the factors set forth in Section 5K1.1 of the Guidelines.

          Respectfully submitted,

          DAMIAN WILLIAMS
          United States Attorney


By: *Dina McLeod*
     Dina McLeod
     Daniel Nessim
     Assistant United States Attorneys
     (212) 637-1040/ -2486


cc:    Sarita Kedia and Diane Fischer, Esqs. (by ECF)